UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATIONWIDE LENDING CORPORATION, )
et al., )
 )
    Plaintiff(s), )
 )
vs. ) Case No. 4:97CV2202 JCH
 )
QUADS TRUST CO., et al., )
 )
    Defendant(s). )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Quads Trust Company's ("QTC") Motion to Dismiss Plaintiffs' Amended Complaint ("QTC's Motion to Dismiss"), filed November 30, 1998. The matter is fully briefed and ready for decision.

## BACKGROUND[1]

Plaintiffs filed their original Complaint in this matter on October 30, 1997. (Doc. No. 1). In the Complaint, the approximately 350 named Plaintiffs[2] listed 140 individuals and/or entities as Defendants. Despite the large number and apparent variety of both Plaintiffs and Defendants, however, Plaintiffs repeatedly referred generically to "Plaintiffs" and "Defendants" in their

---

[1] In its background section, the Court includes only those allegations pertaining to Defendant QTC.

[2] In both their Complaint and Amended Complaint (filed August 21, 1998), Plaintiffs sought certification of the action as a class action under Federal Rule of Civil Procedure 23. (Compl., P. 22; Amended Compl. P. 25). In an Order dated August 21, 1998, the Court gave Plaintiffs' counsel thirty (30) days to file a motion to determine whether the action was to be maintained as a class action. (Doc. No. 22, P. 1). The Court further delineated in detail the required contents of such a motion. (Id., PP. 1-3). When Plaintiffs failed to respond to the directive, the Court struck the class allegations in the Amended Complaint, holding that the case would proceed in the individual capacities of the named Plaintiffs only. (Doc. No. 42). Plaintiffs requested reconsideration of the ruling on November 23, 1998 (Doc. No. 99), but the request was denied in an Order dated December 2, 1998. (Doc. No. 103).

Complaint, thus making it impossible to ascertain the particular Defendants accused of engaging in the conduct at issue.

On April 9, 1998, Defendant QUADS Trust Company ("QTC") filed a Motion to Dismiss Plaintiffs' Complaint. (Doc. No. 9). In its motion, Defendant QTC asserted as follows:

> The Complaint is a classic example of the alarmingly familiar general allegations prohibited by Federal Rule of Civil Procedure 9(b) (hereinafter referred to as "Rule 9(b)"). Plaintiff[3] alleges, in conclusory fashion, that "Defendants" put together sham partnerships, sold interests in them, and then fraudulently transferred Plaintiff's money to shell corporations and individual defendants. Plaintiff makes absolutely no attempt to plead how QTC, a trust company, played any role in the forming of the partnerships or the syndication of interests therein, or, more distressingly, how QTC knew that the partnerships were a sham. Rather, Plaintiff pleads in dragnet fashion, that all Defendants participated in all activities and, at worst, only singles QTC out as having played some collateral role with respect to the partnerships.[4]

(QTC's First Memo in Support, P. 2). QTC thus maintained that Plaintiff's Complaint must be dismissed, as Plaintiff "fails to offer any particularized facts about QTC relating to: (1) specific misrepresentations; (2) scienter; (3) causation; (4) relationship to other defendants; and (5) the general business of QTC and its relationship to Plaintiff or any other purported investor." (QTC's

---

[3] Defendant QTC explains that because Plaintiffs seek class certification, with Plaintiff Nationwide Lending Corporation as class representative, QTC addresses only Nationwide Lending Corporation in its motion. (Defendant QUADS Trust Company's Memorandum of Law in Support of its Motion to Dismiss ("QTC's First Memo in Support"), P. 1 n. 1).

[4] Plaintiffs make only one specific allegation with respect to QTC in their original Complaint, as follows:
> QUADS Trust Company, a Maryland corporation, d/b/a QUADS represented that Plaza Partners and I-Net Providers had been investigated and determined them to be safe investments as they met IRA standards. QUADS also charged a $175 investigative fee for that service to partners who held their General Partnerships interests with them. QUADS further made misrepresentations as described herein with respect to General Partnership Units.

(Compl. ¶25(a)).

First Memo in Support, P. 7).[5]

In response to QTC's Motion to Dismiss, Plaintiffs filed their First Amended Complaint on August 21, 1998. (Doc. No. 21). In their Amended Complaint, Plaintiffs make the following allegations: In 1996, Defendants[6] sold partnership interests in the Plaza Partners and I-Net General Partnerships. (Amended Compl. ¶2). Plaza Partners was purportedly designed to generate revenues for the creation of an Internet shopping mall called Central Plaza. (Id.). I-Net Providers was allegedly created to develop the necessary computer hardware and software, and to operate and market a nationwide Internet service provider by acquiring regional access providers. (Amended Compl. ¶3).

Defendants sold units in the partnerships to the investing public at a cost of $5,000.00 per unit. (Amended Compl. ¶4). Each of the named Plaintiffs purchased at least one partnership unit. (Amended Compl. ¶22). Plaintiffs allege that Defendants made material misrepresentations and/or omissions with respect to the sales of the securities. For example, Plaintiffs allege that Defendants failed to disclose that eighty-five percent of the money invested was to be spent on fees paid to Defendants. (Compl. ¶4). Plaintiffs further claim Defendants falsely represented that other investors were already receiving profit distributions, that "hundreds of merchants" were signed up to do business with Central Plaza, and that several companies had expressed interest in buying out the Partners at a large profit. (Id.). With respect to Defendant QTC, Plaintiffs allege as follows:

> Investors were further assured that defendant QUADS trust had made an independent investigation of the legitimacy and compliance and that QUADS had found the

---

[5] QTC continues to explain in great detail the elements missing from each of Plaintiffs' claims against QTC. (QTC's First Memo in Support, PP. 14-34).

[6] Plaintiffs continue to refer to the 140 named Defendants generically as "Defendants" in their Amended Complaint; they do, however, add some more specific allegations with respect to Defendant QTC.

partnerships to be legitimate and compliant with applicable law, and thus suitable for holding in IRA portfolios. Further, investors seeking additional references were encouraged to contact QUADS for additional reassurances.

(Compl. ¶4). Plaintiffs assert that the above representations were false, as they claim that the most minimal investigation would have revealed that, "neither Plaza Partners nor I-Net was a properly registered or exempted security, that the promoters of both entities were recidivist securities violators, and that there were no operating businesses or even elementary financial statements to review." (Compl. ¶25(a)).[7] Plaintiffs state that because the purported businesses were not legitimate, none of the Plaintiff investors has received a return on his or her money. (Compl. ¶¶5, 6).[8]

Plaintiffs' Amended Complaint consists of seven (7) Counts, as follows: (I) Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder; (II) Violations of Section 12(2) of the Securities Act; (III) Violations of Section 15 of the Securities Act and Section 20(a) of the Exchange Act; (IV) Violations of Section 12(1) of the Securities Act; (V) Fraud; (VI) Negligent Misrepresentation; and (VII) Conversion, Breach of Fiduciary Duty. (Compl. ¶¶32-76). Plaintiffs apparently concede that neither Count III nor Count VII applies to Defendant QTC. (Compl. ¶¶47, 73). QTC therefore filed its Motion to Dismiss with respect to the remaining Counts on November 30, 1998.

## STANDARD FOR MOTION TO DISMISS

In passing on a motion to dismiss, a court must view the allegations in the complaint in the

---

[7] Plaintiffs further allege that no standards exist to determine whether assets are suitable for holding in these types of IRA accounts. (Compl. ¶25(a)).

[8] On October 30, 1996, the Securities and Exchange Commission obtained a temporary restraining order against Defendants, and had a receiver appointed who took control of Defendants' offices. (Compl. ¶18).

light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A cause of action should not be dismissed for failure to state a claim unless, from the face of the complaint, it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978), cert. denied, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (citations omitted).

## DISCUSSION

### I.   Section 10(b) and Rule 10b-5 Claims

Section 10(b) of the Exchange Act reads as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--...
> (b)   To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1934). Rule 10b-5, promulgated by the Securities and Exchange Commission pursuant to §10(b), prohibits fraudulent conduct in the sale and purchase of securities. 17 C.F.R. § 240.10b-5 (1997). In order to recover in a private action brought under Rule 10b-5, a plaintiff must establish:

> 1) that the defendant acted in a manner prohibited by the Rule, whether it be that the defendant employed a device, scheme, or artifice to defraud, made misrepresentations or omissions of material fact, or engaged in acts, practices or courses of business that operate as a fraud or deceit; 2) causation, often analyzed in terms of materiality and reliance; 3) damages; and 4) that the fraudulent activity occurred in connection with

the purchase and sale of a security.

In re NationsMart Corp. Secur. Litig., 130 F.3d 309, 320 (8th Cir. 1997) (quoting Harris v. Union Electric Co., 787 F.2d at 362), cert. denied, 118 S.Ct. 2321 (1998). "Proof of scienter, or the 'intent to deceive, manipulate, or defraud,' is necessary to prevail in a 10b-5 action." In re NationsMart, 130 F.3d at 320.

### A. Plaintiffs' Section 10(b) and Rule 10b-5 Claims should be Dismissed because No Alleged Misstatement or Omission is Pled with the Particularity Required by Rule 9(b)

"[P]laintiffs alleging securities fraud must comply with the enhanced pleading requirements of Fed. R. Civ. P. 9(b)." In re Marion Merrell Dow Inc., 1994 WL 396187 at *3 (W.D. Mo.). Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."[9] The Eighth Circuit has elaborated upon the requirements of Rule 9(b) as follows:

> [F]or Rule 9(b), "'[c]ircumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby...[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Property Invs., Inc. v. Quality Inns Int's, Inc., 61 F.3d 639, 644 (8th Cir. 1995) (quotations and citations omitted); see also DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) ("[T]he circumstances [constituting fraud] must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story...")...

---

[9] In the context of securities litigation, Rule 9(b)'s particularity requirement serves three purposes:
> First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel in terrorem settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense.

Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997), quoting Weisburgh v. St. Jude Med., Inc., 158 F.R.D. 638, 642 (D. Minn. 1994), aff'd, 62 F.3d 1422 (8th Cir. 1995) (unpublished) (per curiam).

Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-550 (8th Cir. 1997).

### 1. All Plaintiffs other than Pamela Pelzel[10]

In their Amended Complaint, Plaintiffs make only generalized allegations with respect to Defendant QTC and all Plaintiffs other than Pamela Pelzel. In its Motion to Dismiss, QTC notes that with these assertions Plaintiffs fail to allege "(1) who else (besides Pamela Pelzel), if anyone, spoke to QTC, (2) when they spoke with QTC, (3) what was said, and (4) why any alleged statement was false." (QUADS' Trust Company's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("QTC's Second Memo in Support"), PP. 7-8). QTC thus asserts that Plaintiffs' 10(b) Count with respect to these Plaintiffs must be dismissed, as it fails to comply with the particularity requirements of Rule 9(b).

In response, Plaintiffs offer two separate defenses to QTC's allegations. First, Plaintiffs assert that "*[m]ost* of the Plaintiffs/class members" were informed that the partnerships were IRA approved, and that QTC had performed an independent investigation as part of the IRA asset approval process. (Plaintiffs' Response to Defendant QUADS' Motion to Dismiss ("Plaintiffs' Response"), P. 4 (emphasis added)). Plaintiffs further contend that "*[m]ost or all* potential investors were subjected to a scripted sales pitch" that included entreaties to contact QTC for verification of the partnerships' legitimacy. (Id., PP. 4, 9 (emphasis added)).[11]

---

[10] In their Amended Complaint, Plaintiffs make specific allegations with respect to only Pamela Pelzel. Plaintiffs attempt to add allegations with respect to Pierre Simonpietri, the President of Nationwide Lending Corporation, in their Response to QTC's Motion to Dismiss. Such allegations may not be considered, however, in deciding whether Plaintiffs have stated a claim for purposes of Fed. R. Civ. P. 12(b)(6).

[11] Plaintiffs state as follows: "While a scientific study has not been made the undersigned estimates that around 30% of investors directly contacted QUADS, 20% purchased through QUADS, 60% recall being told of QUADS by name, and that 95% were told and remember that the investments were IRA approved." (Plaintiffs' Response, P. 4 n. 3). With this statement, Plaintiffs acknowledge that up to an unidentified 40% of Plaintiffs may never have heard of QTC or its alleged

Upon review, the Court finds Plaintiffs' allegations insufficient to meet the stringent pleading requirements of Rule 9(b). For example, Plaintiffs fail to delineate the "who" on both sides of the alleged misrepresentations; in other words, Plaintiffs specify neither which employee(s) at Defendant QTC (or which other Defendants) made the comments at issue, nor which Plaintiffs received the false information. Plaintiffs further fail to indicate when and where the alleged misrepresentations were made, or how they were communicated to the various Plaintiffs at issue. Plaintiffs' conclusory allegations are insufficient to provide notice to QTC of the allegations against it, and thus deprive QTC of the opportunity to prepare an effective defense. Parnes, 122 F.3d at 549 (citation omitted).

Plaintiffs next attempt to avoid dismissal for lack of particularity by claiming that they are proceeding as a class action. (Plaintiffs' Response, P. 16). Plaintiffs acknowledge that this Court effectively struck their class action allegations from the Complaint in an Order dated October 19, 1998. Plaintiffs nevertheless proceed to analyze QTC's Motion to Dismiss as though they are a class, however, explaining that they assume their motion to vacate the Order striking class allegations will be granted. (Plaintiffs' Response, P. 17). Plaintiffs finally conclude that, "[w]ith a class action, Plaintiffs only need plead and prove the representative parties' causes of action and that class members are similarly situated." (Plaintiffs' Response, P. 16, citing Fed. R. Civ. P. 23).

Upon review of the record before it, the Court finds a fatal flaw in Plaintiffs' reasoning. As stated above, Plaintiffs' request for reconsideration of the Court's ruling striking class allegations in the Amended Complaint was denied on December 2, 1998. (Doc. No. 103). Plaintiffs did not file the instant Response to QTC's Motion to Dismiss until December 7, 1998 (Doc. No. 107), nearly a week after their request for reconsideration of class status had been denied. The Court thus finds that Plaintiffs were aware at the time they filed their response that this case was not to proceed as

---

misrepresentations.

a class action, and that they were therefore required to plead their allegations of fraud with particularity for each Plaintiff and each Defendant. Plaintiffs failed to plead with particularity with respect to all Plaintiffs except Pamela Pelzel, and so their Section 10(b) allegations against QTC for all other Plaintiffs will be dismissed.[12]

### 2. Plaintiff Pamela Pelzel

In their Complaint, Plaintiffs allege that "QUADS' employees Holly Cagey and Margaret C. Fox, among others who failed to identify themselves, represented [to Plaintiff Pelzel] that the partnerships had been investigated by QUADS, that there (sic) were found to be legitimate, non-fraudulent, viable businesses that met both stringent federal government standards and QUADS' own even more stringent standards." (Compl. ¶35(a)). Plaintiffs assert that the representations were made on May 13 and May 14, 1996, and further that the statements were false as QTC had performed no meaningful investigation. (Compl. ¶¶35(b), (d)).

Viewing the allegations in the light most favorable to Plaintiffs, as it must for purposes of this motion, the Court finds that Plaintiff Pelzel has explained the "who, what, when, where and how" of her 10(b) claim against QTC. DiLeo, 901 F.2d at 627. The Court thus holds that the allegations in the Complaint with respect to Plaintiff Pelzel are sufficiently particular under Rule 9(b) to survive Defendant QTC's Motion to Dismiss.

---

[12] In their Response, Plaintiffs further request leave to amend their Complaint to cure any deficiencies. (Plaintiffs' Response, P. 11). Upon consideration, the Court will deny this request. As stated above, QTC filed its original Motion to Dismiss in this matter on April 9, 1998. (Doc. No. 8). QTC delineated the particularity requirements and problems in that motion. Plaintiffs have thus been aware of the issue since no later than April 9, 1998; when they did file their Amended Complaint on August 21, 1998, however, Plaintiffs chose to remedy the situation with respect to Plaintiff Pamela Pelzel only. Further, with the exception of the request in the instant Response, Plaintiffs have not sought leave again to amend. The Court thus finds that it would be inappropriate to permit further amendment at this late date, i.e., seventeen months after the filing of the original Complaint and nearly a year after Defendant QTC first outlined the deficiencies in its Motion to Dismiss.

> **B. Plaintiffs' Section 10(b) and Rule 10b-5 Claims should be Dismissed because the Complaint does not Contain Facts Establishing a Strong Inference of Scienter with respect to QUADS**[13]

Defendant QTC next asserts that Plaintiffs fail to allege the required strong inference of scienter. In support, QTC claims that because Plaintiffs' Complaint principally alleges that the partnerships were shams and money was misappropriated, the critical question relating to scienter is therefore whether QTC knew the partnerships were shams or that the money was being misappropriated. (QTC's Second Memo in Support, P. 14). QTC concludes that because Plaintiffs do not allege that "QTC knew the partnerships were shams, that QTC misappropriated any investor money, or even that QTC was aware of the misappropriation of the money," Plaintiffs fail to meet their pleading requirement in terms of scienter. (QTC's Second Memo in Support, PP. 14-15).

Upon review, the Court agrees that Plaintiffs' allegations of scienter are extremely weak. Plaintiffs do allege in their Amended Complaint, however, that "QUADS also permitted and encouraged the other defendants to validate their own misrepresentations and fraud with statements about QUADS having investigated the partnerships and to refer dubious potential investors to QUADS for additional reassurances." (Amended Compl. ¶25(a)). Plaintiffs submit no evidence in support of this claim of a partnership and/or working relationship between QTC and the other Defendants. Such documentation is not required at the motion to dismiss stage, however, because as stated above the Court must not dismiss Plaintiffs' cause of action for failure to state a claim unless it appears beyond a reasonable doubt that they can prove no set of facts entitling them to relief. Scheuer v. Rhodes, 416 U.S. at 236; Conley v. Gibson, 355 U.S. at 45-46. Applying that standard to the present case, the Court finds that Plaintiff Pelzel may be entitled to relief if she

---

[13] The discussion in sections I(B) and I(C) of this Order pertain only to Plaintiff Pelzel, as the 10(b) Count has been dismissed with respect to all other Plaintiffs.

successfully proves that Defendant QTC entered into a partnership with the other Defendants, such that QTC was involved with the creation of the scam partnerships and the misappropriation of Plaintiffs' funds. QTC's Motion to Dismiss on the issue of scienter with respect to Plaintiff Pelzel's Section 10(b) and Rule 10b-5 claim is therefore denied.

### C. Plaintiffs Fail to Plead Loss Causation as Required by the Reform Act

In its final argument with respect to Plaintiffs' 10(b) claim, QTC asserts that Plaintiffs' claim must be dismissed as they have failed adequately to plead loss causation. (QTC's Second Memo in Support, P. 15). In order to state a Section 10(b) and Rule 10b-5 claim, Plaintiffs must plead causation, which includes both "transaction causation" and "loss causation." Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1447 (11th Cir. 1997). The Eighth Circuit has explained the distinction as follows:

> To satisfy the first element, a plaintiff must prove that the allegedly fraudulent acts caused the plaintiff to purchase the securities...We have variously characterized this showing as a type of "causation in fact,"... "but for causation,"... "reliance,"...or as satisfying Rule 10b-5's "in connection with the purchase or sale of any security" requirement....In the *lingua franca* of Rule 10b-5 cases, however, this showing is usually referred to as "transaction causation."...
> To satisfy the second causation element the plaintiff must prove that the allegedly fraudulent acts caused the plaintiff's economic harm....Again, endeavoring to maintain some consistency with our sister circuits,...we refer to this showing as "loss causation."

Arthur Young & Co. v. Reves, 937 F.2d 1310, 1327-28 (8th Cir. 1991) (citations omitted). QTC thus asserts that while Plaintiffs allege "transaction causation," i.e., that they would not have purchased the partnership units "but for" QTC's alleged misrepresentations, Plaintiffs fail to allege "loss causation," i.e., that QTC's alleged misrepresentations were in some reasonably direct or proximate way responsible for their losses. (QTC's Memo in Support, PP. 15-16, citing Huddleston v. Herman & MacLean, 640 F.2d 534, 549 (5th Cir. 1981)).

The Eighth Circuit's standard for loss causation is broad, as follows: "'Plaintiffs are not required to meet a strict test of direct causation under Rule 10b-5; they need only show 'some causal nexus' between [the defendant's] improper conduct and plaintiff's losses...'" Arthur Young & Co., 937 F.2d at 1332, quoting In Re Control Data Corp. Sec. Litig., 933 F.2d 616, 619-20 (8th Cir. 1991) (citations omitted). In the portion of their response addressing the issue, however, Plaintiffs present no evidence of loss causation, instead alleging only facts tending toward a finding of transaction causation. (Plaintiffs' Response, PP. 22-23).

Upon consideration of Plaintiffs' Amended Complaint in its entirety, however, the Court finds it inappropriate to grant QTC's Motion to Dismiss with respect to loss causation. As stated above, Plaintiffs do allege (albeit without supporting documentation), that QTC somehow formed a partnership relationship with the other Defendants. (Plaintiffs' Response, PP. 4, 7-8). Again viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiff Pelzel may be able to demonstrate loss causation if she successfully adduces evidence supporting her claim of collusion. QTC's Motion to Dismiss with respect to Plaintiff Pelzel's Section 10(b) and Rule 10b-5 claim will therefore be denied.

## II. Plaintiffs' Sections 12(1) and 12(2) Claims Must be Dismissed as Plaintiffs Fail Sufficiently to Allege that QTC was a "Seller"

In order for liability to be imposed under Sections 12(1) and 12(2), the alleged seller must (1) own the securities or pass title to them, or (2) have "solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." Pinter v. Dahl, 486 U.S. 622, 647, 108 S.Ct. 2063, 2078, 100 L.Ed.2d 658 (1988). Plaintiffs' allegations with respect to QTC's alleged role as "seller" are as follows:

> Defendants offered and sold securities to Plaintiffs by means of interstate commerce, including the mails, wires, and telephones, using written offering memoranda (not

> rising to the level of prospectuses) and oral communications. In addition to the telemarketers and closers, *QUADS trust also successfully solicited and closed approximately 100 sales of partnership units to plaintiffs* with an approximate value of $2 million, including every sale where the plaintiff was interested in purchasing units through their IRA, and including the sale to Pamela Pelzel referenced in Count I. QUADS was directly in the chain of title as it received funds from the Plaintiffs, both by check and by trustee to trustee rollover, and held legal title to the partnership units it purchased on their behalf. *Further QUADS trust received investigation fees, account setup fees, service fees, on information and belief commissions on the sales,* and the right to other fees under its account agreement with plaintiffs and as are typical for IRA trustees.

(Compl. ¶43 (emphasis added)). Defendant QTC asserts that Plaintiffs' Sections 12(1) and 12(2) claims must be dismissed, as with these allegations Plaintiffs fail adequately to plead that QTC was a "seller" of the securities at issue. (QTC's Second Memo in Support, PP. 17-21).

A. **Plaintiff Pelzel**

In its Memorandum in Support, QTC does not dispute that Plaintiffs allege QTC actively solicited the purchase of the securities at issue. (QTC's Memo in Support, P. 19).[14] QTC asserts, however, that because claims under Sections 12(1) and 12(2) are premised on fraud, Plaintiffs' claims must meet the enhanced pleading requirements of Rule 9(b). (Id.). QTC concludes that because Plaintiffs fail to allege with sufficient particularity both that QTC actually solicited Plaintiffs, and that QTC was motivated by its own financial interests, their Sections 12(1) and 12(2) claims with respect to QTC must be dismissed. (Id. at 19-21).

In response, Plaintiffs correctly note that the pleading requirements of Rule 9(b) do not apply to claims under Section 12. (Plaintiffs' Response, P. 24, citing In re NationsMart Corp. Secur.

---

[14] QTC notes that to qualify as a "solicitor", Plaintiffs must plead that QTC "(1) actually solicited plaintiffs and (2) was motivated by its own financial interests or those of the Partnership unit owners." (QTC's Second Memo in Support, P. 19, citing Pinter v. Dahl, 466 U.S. at 647).

- 13 -

Litig., 130 F.3d 309, 319 (8th Cir. 1997), cert. denied, 118 S.Ct. 2321 (1998)).[15] Plaintiffs' claims thus fall under the pleading requirements of Rule 8, which states in relevant part as follows:

> A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain...(2) a short and plain statement of the claim showing that the pleader is entitled to relief,....

Fed. R. Civ. P. 8(a). Under this more relaxed standard, the Court finds Plaintiffs' pleadings with respect to Plaintiff Pelzel sufficient to survive QTC's Motion to Dismiss.

### B. Plaintiffs other than Pamela Pelzel

As stated above, Plaintiffs make specific allegations in their pleadings with respect to only Plaintiff Pelzel. For the other Plaintiffs, Plaintiffs state only that "QUADS trust also successfully solicited and closed approximately 100 sales of partnership units to plaintiffs with an approximate value of $2 million, including every sale where the plaintiff was interested in purchasing units through their IRA,..." (Compl. ¶43). With this allegation, Plaintiffs do not specify which one hundred of the approximately three hundred fifty Plaintiffs actually have a claim against QTC. The Court thus finds Plaintiffs' allegations with respect to all Plaintiffs other than Pelzel insufficient to meet even the lesser pleading requirements of Rule 8, and Plaintiffs' Sections 12(1) and 12(2) claims with respect to these Plaintiffs will therefore be dismissed.

### III. Fraud

In Count V of their Complaint, Plaintiffs rely on the same purportedly false and materially misleading statements by Defendant QTC to assert a claim for common law fraud. (Compl. ¶¶ 55-65). As stated above, Rule 9(b) provides that all averments of fraud must be stated with particularity. Fed. R. Civ. P. 9(b). The Court finds that its analysis of Plaintiffs' 10b claim in section I above

---

[15] The NationsMart court held as follows: "But Rule 9(b) does not apply to claims brought under §12(2) because, as in the case of §11, proof of fraud and scienter are not necessary for recovery." In re NationsMart, 130 F.3d at 319.

applies here as well, and so the Court will grant QTC's Motion to Dismiss on Plaintiffs' fraud claim with respect to all Plaintiffs except Pamela Pelzel.

### IV. Negligent Misrepresentation

In Count VI of their Complaint, Plaintiffs allege that in its failure to exercise reasonable care, Defendant QTC issued the above-mentioned false statements upon which Plaintiffs reasonably relied. (Compl. ¶¶ 66-72). Plaintiffs thus claim that QTC is liable under the theory of negligent misrepresentation. Although this claim is not subject to the heightened pleading requirements of Rule 9(b), the Court nevertheless finds that it must be dismissed with respect to all Plaintiffs other than Pamela Pelzel under the reasoning described in Section II(B) above.[16] QTC's Motion to Dismiss with respect to Plaintiffs' negligent misrepresentation claim will therefore be granted for all Plaintiffs other than Pamela Pelzel.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant QTC's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 0, filed November 30, 1998) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant QTC's Motion to Dismiss with respect to Plaintiffs' Section 10(b) and Rule 10b-5 claim (Doc. No. 0, filed November 30, 1998) is **DENIED** with respect to Plaintiff Pamela Pelzel, and **GRANTED** with respect to all other Plaintiffs.

**IT IS FURTHER ORDERED** that Defendant QTC's Motion to Dismiss with respect to Plaintiffs' Sections 12(1) and 12(2) claims (Doc. No. 0, filed November 30, 1998) is **DENIED** with respect to Plaintiff Pamela Pelzel, and **GRANTED** with respect to all other Plaintiffs.

---

[16] In other words, Plaintiffs' (other than Pamela Pelzel) allegations in its negligent misrepresentation count are insufficient even to meet the lesser pleading requirements of Rule 8.

**IT IS FURTHER ORDERED** that Defendant QTC's Motion to Dismiss with respect to Plaintiffs' fraud claim (Doc. No. 0, filed November 30, 1998) is **DENIED** with respect to Plaintiff Pamela Pelzel, and **GRANTED** with respect to all other Plaintiffs.

**IT IS FURTHER ORDERED** that Defendant QTC's Motion to Dismiss with respect to Plaintiffs' negligent misrepresentation claim (Doc. No. 0, filed November 30, 1998) is **DENIED** with respect to Plaintiff Pamela Pelzel, and **GRANTED** with respect to all other Plaintiffs.[17]

Dated this 31st day of March, 1999.

                                                            */s/ Jean C. Hamilton*
                                             UNITED STATES DISTRICT JUDGE

---

[17] Thus the only outstanding claims against Defendant QTC are Plaintiff Pamela Pelzel's claims of Sections 10(b), 12(1) and 12(2) violations, fraud and negligent misrepresentation.

```
                    UNITED STATES DISTRICT COURT - EASTERN MISSOURI
                               INTERNAL RECORD KEEPING
```

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED AND FAXED TO THE FOLLOWING
INDIVIDUALS ON 03/31/99 by clippold
              4:97cv2202     Nationwide Lending vs QUADS Trust Co.

15:78m(a) Securities Exchange Act

Peter Bender -   66410              Fax: 314-647-5314
Evan Buxner -    37452              Fax: 314-863-9388

Mark Casbar -
1970 Fishermans Bend
Palm Harbor, FL  34685


Robin Connearney -
895 N.W. 132 Avenue
Pembroke Pines, FL  33025


Diane Corbett -
2241 Eugenia Court
Oviedo, FL  32765

Jeffrey Demerath -   2963           Fax: 314-241-8624

Doris Ermish -
2720 Aloma Avenue
Winter Park, FL  32792 - 3504


Robert Hart -
806 Elmbrook Court
Southlake, TX  76092

Richard Huck -   3441               Fax: 314-863-9388
Steven Jacob -                      Fax: 561-364-4845
Mike Kelly -                        Fax: 727-724-0743
Lori Leighton -                     Fax: 407-839-6007
Lisa Nielsen -   31995              Fax: 314-241-8624
Charles Seigel -   20113            Fax: 314-726-5809

Mike Sinibaldi -
6109 Raleigh Street
Apartment 517
Orlando, FL  32835

J. Smith -                          Fax: 702-382-7497
Michael Wolff -   4740              Fax: 314-726-5809
Vince Zabbo -                       Fax: 407-260-5090
```

SCANNED & FAXED BY:
MAR 3 1 1999
J. M. W.